UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

JENNIFER M. GARCIA,                )   Case No. EDCV 12-954 JC
                                   )
                    Plaintiff,     )
                                   )   MEMORANDUM OPINION
          v.                       )
                                   )
MICHAEL J. ASTRUE,                 )
Commissioner of Social             )
Security,                          )
                                   )
                    Defendant.     )
_____    )

## I.   SUMMARY

On June 21, 2012, plaintiff Jennifer M. Garcia ("plaintiff") filed a
Complaint seeking review of the Commissioner of Social Security's denial of
plaintiff's application for benefits.  The parties have consented to proceed before a
United States Magistrate Judge.

This matter is before the Court on the parties' cross motions for summary
judgment, respectively ("Plaintiff's Motion") and ("Defendant's Motion").  The
Court has taken both motions under submission without oral argument.  See Fed.
R. Civ. P. 78; L.R. 7-15; June 25, 2012, Case Management Order ¶ 5.

///

1

1    Based on the record as a whole and the applicable law, the decision of the

2    Commissioner is AFFIRMED.  The findings of the Administrative Law Judge

3    ("ALJ") are supported by substantial evidence and are free from material error.[1]

4    **II.    BACKGROUND AND SUMMARY OF ADMINISTRATIVE**

5    **        DECISION**

6    On August 15, 2005, plaintiff filed an application for Supplemental Security

7    Income benefits.  (Administrative Record ("AR") 12, 445).  Plaintiff asserted that

8    she became disabled on May 1, 1999, due to severe post traumatic stress disorder

9    ("PTSD"), anxiety disorder, behavioral disorder, sleeping disorder and depression.

10   (AR 12, 73).  The ALJ examined the medical record and held a hearing on July 17,

11   2007 at which plaintiff's attorney, but not plaintiff, appeared.  (AR 12).  On

12   August 24, 2007, the ALJ determined that plaintiff was not disabled through the

13   date of the decision.  (AR 428-34).

14   On September 25, 2009, the Appeals Council granted review, vacated the

15   ALJ's August 24, 2007 decision, and remanded the matter for further

16   administrative proceedings.  (AR 435-38).  The ALJ again examined the medical

17   record and heard testimony from plaintiff (who was represented by counsel) and a

18   vocational expert on December 21, 2010.  (AR 455-70).

19   On March 16, 2011, the ALJ again determined that plaintiff was not

20   disabled through the date of the decision.  (AR 12-20).  Specifically, the ALJ

21   found:  (1) plaintiff suffered from the following severe impairments:  depression

22   and new obesity with fluctuating weight (AR 15); (2) plaintiff's impairments,

23   considered singly or in combination, did not meet or medically equal a listed

24   impairment (AR 16); (3) plaintiff retained the residual functional capacity to

25

26   [1]The harmless error rule applies to the review of administrative decisions regarding
27   disability.  See Molina v. Astrue, 674 F.3d 1104, 1115-22 (9th Cir. 2012) (discussing contours of
     application of harmless error standard in social security cases) (citing, *inter alia*, Stout v.
28   Commissioner, Social Security Administration, 454 F.3d 1050, 1054-56 (9th Cir. 2006)).

perform less than a full range of light work (20 C.F.R. § 416.967(b)) [2] (AR 17); (4) plaintiff was unable to perform her past relevant work (AR 19); (5) there are jobs that exist in significant numbers in the national economy that plaintiff could perform, specifically assembler (plastics) and cleaner (AR 19-20); and (6) plaintiff's allegations regarding her limitations were not credible to the extent they were inconsistent with the ALJ's residual functional capacity assessment (AR 18-19).

The Appeals Council denied plaintiff's second application for review.  (AR 5).

### III.    APPLICABLE LEGAL STANDARDS

#### A.    Sequential Evaluation Process

To qualify for disability benefits, a claimant must show that the claimant is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." Molina v. Astrue, 674 F.3d 1104, 1110 (9th Cir. 2012) (quoting 42 U.S.C. § 423(d)(1)(A)) (internal quotation marks omitted).  The impairment must render the claimant incapable of performing the work claimant previously performed and incapable of performing any other substantial gainful employment that exists in the national economy.  Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 42 U.S.C. § 423(d)(2)(A)).

///

---

[2]Specifically, the ALJ determined that plaintiff:  (i) could lift and carry 20 pounds occasionally and 10 pounds frequently; (ii) could sit, stand, and/or walk for six hours each in an eight-hour workday; (iii) could only do simple repetitive tasks; (iv) needed to work in a low-stress environment with no more than occasional decision making or changes in the routine work setting; (v) could work around other employees but only with occasional conversations and interpersonal interactions; and (vi) could not have direct contact with the general public.  (AR 17).

In assessing whether a claimant is disabled, an ALJ is to follow a five-step sequential evaluation process:

(1)     Is the claimant presently engaged in substantial gainful activity?  If so, the claimant is not disabled.  If not, proceed to step two.

(2)     Is the claimant's alleged impairment sufficiently severe to limit the claimant's ability to work?  If not, the claimant is not disabled.  If so, proceed to step three.

(3)     Does the claimant's impairment, or combination of impairments, meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1?  If so, the claimant is disabled.  If not, proceed to step four.

(4)     Does the claimant possess the residual functional capacity to perform claimant's past relevant work?  If so, the claimant is not disabled.  If not, proceed to step five.

(5)     Does the claimant's residual functional capacity, when considered with the claimant's age, education, and work experience, allow the claimant to adjust to other work that exists in significant numbers in the national economy?  If so, the claimant is not disabled.  If not, the claimant is disabled.

Stout v. Commissioner, Social Security Administration, 454 F.3d 1050, 1052 (9th Cir. 2006) (citing 20 C.F.R. §§ 404.1520, 416.920); see also Molina, 674 F.3d at 1110 (same).

The claimant has the burden of proof at steps one through four, and the Commissioner has the burden of proof at step five.  Bustamante v. Massanari, 262 F.3d 949, 953-54 (9th Cir. 2001) (citing Tackett, 180 F.3d at 1098); see also Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) (claimant carries initial burden of proving disability).

///

4

1   **B.   Standard of Review**

2       Pursuant to 42 U.S.C. section 405(g), a court may set aside a denial of

3   benefits only if it is not supported by substantial evidence or if it is based on legal

4   error.  Robbins v. Social Security Administration, 466 F.3d 880, 882 (9th Cir.

5   2006) (citing Flaten v. Secretary of Health & Human Services, 44 F.3d 1453, 1457

6   (9th Cir. 1995)).  Substantial evidence is "such relevant evidence as a reasonable

7   mind might accept as adequate to support a conclusion."  Richardson v. Perales,

8   402 U.S. 389, 401 (1971) (citations and quotations omitted).  It is more than a

9   mere scintilla but less than a preponderance.  Robbins, 466 F.3d at 882 (citing

10  Young v. Sullivan, 911 F.2d 180, 183 (9th Cir. 1990)).

11      To determine whether substantial evidence supports a finding, a court must

12  "'consider the record as a whole, weighing both evidence that supports and

13  evidence that detracts from the [Commissioner's] conclusion.'"  Aukland v.

14  Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001) (quoting Penny v. Sullivan, 2 F.3d

15  953, 956 (9th Cir. 1993)).  If the evidence can reasonably support either affirming

16  or reversing the ALJ's conclusion, a court may not substitute its judgment for that

17  of the ALJ.  Robbins, 466 F.3d at 882 (citing Flaten, 44 F.3d at 1457).

18  **IV.   DISCUSSION**

19      **A.   The ALJ Properly Evaluated the Medical Opinion Evidence**

20          **1.   Pertinent Law**

21      In Social Security cases, courts employ a hierarchy of deference to medical

22  opinions depending on the nature of the services provided.  Courts distinguish

23  among the opinions of three types of physicians:  those who treat the claimant

24  ("treating physicians") and two categories of "nontreating physicians," namely

25  those who examine but do not treat the claimant ("examining physicians") and

26  those who neither examine nor treat the claimant ("nonexamining physicians").

27  Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1996) (footnote reference omitted).  A

28  treating physician's opinion is entitled to more weight than an examining

5

physician's opinion, and an examining physician's opinion is entitled to more weight than a nonexamining physician's opinion.[3]  See id.  In general, the opinion of a treating physician is entitled to greater weight than that of a non-treating physician because the treating physician "is employed to cure and has a greater opportunity to know and observe the patient as an individual." Morgan v. Commissioner of Social Security Administration, 169 F.3d 595, 600 (9th Cir. 1999) (citing Sprague v. Bowen, 812 F.2d 1226, 1230 (9th Cir. 1987)).

The treating physician's opinion is not, however, necessarily conclusive as to either a physical condition or the ultimate issue of disability. Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989) (citing Rodriguez v. Bowen, 876 F.2d 759, 761-62 & n.7 (9th Cir. 1989)).  Where a treating physician's opinion is not contradicted by another doctor, it may be rejected only for clear and convincing reasons. Orn v. Astrue, 495 F.3d 625, 632 (9th Cir. 2007) (citation and internal quotations omitted).  The ALJ can reject the opinion of a treating physician in favor of another conflicting medical opinion, if the ALJ makes findings setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record. Id. (citation and internal quotations omitted); Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002) (ALJ can meet burden by setting out detailed and thorough summary of facts and conflicting clinical evidence, stating his interpretation thereof, and making findings) (citations and quotations omitted); Magallanes, 881 F.2d at 751, 755 (same; ALJ need not recite "magic words" to reject a treating physician opinion – court may draw specific and legitimate inferences from ALJ's opinion).  "The ALJ must do more than offer his conclusions." Embrey v. Bowen, 849 F.2d 418, 421-22 (9th Cir. 1988).  "He must

---

[3]Cf. Le v. Astrue, 529 F.3d 1200, 1201-02 (9th Cir. 2008) (not necessary or practical to draw bright line distinguishing treating physicians from non-treating physicians; relationship is better viewed as series of points on a continuum reflecting the duration of the treatment relationship and frequency and nature of the contact) (citation omitted).

1   set forth his own interpretations and explain why they, rather than the

2   [physician's], are correct."  Id.  "Broad and vague" reasons for rejecting the

3   treating physician's opinion do not suffice.  McAllister v. Sullivan, 888 F.2d 599,

4   602 (9th Cir. 1989).

5                    **2.    Pertinent Facts**

6          On December 2, 2010, Dr. Marianne Soor-Melka, one of plaintiff's treating

7   psychiatrists at the San Bernardino County Department of Behavioral Health

8   ("DBH"), completed a Work Capacity Evaluation (Mental) form in which she

9   checked boxes indicating that plaintiff:  (1) had slight limitations in her abilities to

10  ask simple questions or request assistance, maintain socially appropriate behavior

11  and adhere to basic standards of neatness and cleanliness, and be aware of normal

12  hazards and take appropriate precautions; (2) had moderate limitations in her

13  abilities to remember locations and work-like procedures, understand and

14  remember very short and simple instructions, carry out very short and simple

15  instructions, make simple work-related decisions, and interact appropriately with

16  the general public; (3) marked limitations in her abilities to maintain attention and

17  concentration for extended periods, perform activities within a schedule, maintain

18  regular attendance, and be punctual within customary tolerances, sustain an

19  ordinary routine without special supervision, work in coordination with or in

20  proximity to others without being distracted by them, accept instructions and

21  respond appropriately to criticism from supervisors, get along with co-workers or

22  peers without distracting them or exhibiting behavioral extremes, respond

23  appropriately to changes in the work setting, and set realistic goals or make plans

24  independently of others; and (4) would be absent from work three or more days

25  per month due to her impairments or related treatment (collectively Dr. Soor-

26  Melka's Opinions).  (AR 380-81).

27  ///

28  ///

1

      **3.**    **Analysis**

2

     Plaintiff contends that a remand or reversal is warranted because the ALJ

3

failed properly to consider Dr. Soor-Melka's Opinions.  (Plaintiff's Motion at 5-

4

11).  The Court disagrees.

5

     First, the December 2, 2010 form Dr. Soor-Melka submitted contained only

6

check-the-box opinions.  (AR 380-81).  As the ALJ noted, Dr. Soor-Melka

7

provided no diagnosis for plaintiff's mental condition much less any explanation

8

of the findings which brought the treating psychiatrist to conclude that plaintiff

9

had the noted significant mental limitations.  (AR 18, 380-81).  Nor did Dr. Soor-

10

Melka provide any clinical findings (*i.e.*, results of objective psychological testing

11

or mental status examinations) – either her own or from another doctor – to

12

support her opinions.  (AR 18, 380-81).  The ALJ properly rejected Dr. Soor-

13

Melka's Opinions on this basis alone.  <u>See Crane v. Shalala</u>, 76 F.3d 251, 253 (9th

14

Cir. 1996) ("ALJ [] permissibly rejected [psychological evaluation forms] because

15

they were check-off reports that did not contain any explanation of the bases of

16

their conclusions."); <u>see also De Guzman v. Astrue</u>, 343 Fed. Appx. 201, 209 (9th

17

Cir. 2009)[4] (ALJ "is free to reject 'check-off reports that d[o] not contain any

18

explanation of the bases of their conclusions.'") (citing <u>id</u>.); <u>Murray v. Heckler</u>,

19

722 F.2d 499, 501 (9th Cir. 1983) (expressing preference for individualized

20

medical opinions over check-off reports).

21

     Second, the ALJ also properly rejected Dr. Soor-Melka's Opinions because

22

they were not supported by the physician's own notes or the record as a whole.

23

<u>See Bayliss v. Barnhart</u>, 427 F.3d 1211, 1217 (9th Cir. 2005) ("The ALJ need not

24

accept the opinion of any physician, including a treating physician, if that opinion

25

is brief, conclusory, and inadequately supported by clinical findings.") (citation

26

27

    [4]Courts may cite unpublished Ninth Circuit opinions issued on or after January 1, 2007.

28

<u>See</u> U.S. Ct. App. 9th Cir. Rule 36-3(b); Fed. R. App. P. 32.1(a).

1  and internal quotation marks omitted); <u>Connett v. Barnhart</u>, 340 F.3d 871, 875

2  (9th Cir. 2003) (treating physician's opinion properly rejected where treating

3  physician's treatment notes "provide no basis for the functional restrictions he

4  opined should be imposed on [the claimant]").  For example, as the ALJ noted, Dr.

5  Soor-Melka's treatment notes (almost all of which are entitled "Medication Visit")

6  contain little, if any, mention of the significant mental limitations identified in Dr.

7  Soor-Melka's Opinions.  In fact, as the ALJ noted, almost half of Dr. Soor-

8  Melka's treatment notes for plaintiff simply indicate that plaintiff failed to show

9  up for her scheduled appointments.  (AR 286, 288-89, 333-34, 337, 341, 343, 347-

10  48, 350-51).  The remainder essentially record plaintiff's subjective complaints

11  about her mental symptoms and note that Dr. Soor-Melka treated plaintiff's

12  symptoms with various prescription medications.  (AR 332, 335-36, 338-40, 342,

13  344-46, 349, 352-53).  None reflect that Dr. Soor-Melka conducted objective

14  testing of any kind.  In fact, at the hearing plaintiff agreed that her appointments

15  with Dr. Soor-Melka were "mostly [for] medication management."  (AR 456).

16      Records from Dr. Inderpal Dhillon (also a DBH treating psychiatrist) do not,

17  as plaintiff suggests (Plaintiff's Motion at 8), provide any support for Dr. Soor-

18  Melka's Opinions.  A majority of Dr. Dhillon's progress notes for plaintiff (which,

19  likewise, are entitled "Medication Visit") note only that plaintiff had missed her

20  scheduled appointments.  (AR 202-04, 208, 215-17, 219-22, 224-26, 248-50, 252-

21  53, 256, 258-59, 263-66, 268-70, 275-77, 279-82, 285, 287, 289-91, 293, 326,

22  355-57, 359, 361-63, 365, 367-68, 371, 383-85, 387, 389, 390-92, 394, 396-98,

23  400, 402-05, 407-08, 410-12, 415-17).  The remaining records simply document

24  plaintiff's subjective complaints about her mental symptoms and the medication

25  Dr. Dhillon prescribed.  (AR 200-01, 205-07, 209-14, 216, 223, 247, 251, 254-55,

26  257, 261-62, 267, 274, 278, 284, 292, 294-97, 322-25, 353-54, 358, 360, 364, 366,

27  369-70, 372, 386, 388, 393, 395, 399, 401, 406, 409, 413, 418).  Likewise, the

28  Medication Visit notes do not indicate that Dr. Dhillon conducted any objective

1  psychological testing of plaintiff.  Moreover, as the ALJ noted, Dr. Dhillon's

2  records reflect that plaintiff chronically failed to comply with her prescribed

3  medication plan – *i.e.* Dr. Dhillon described plaintiff's medication compliance as

4  "poor" (AR 254, 353, 369), "sporadic" (AR 255), and "erratic" (AR 284, 354, 366,

5  370)).[5]  Although plaintiff essentially argues that the foregoing evidence is

6  "sufficient objective medical signs and laboratory findings of a longitudinal

7  nature" to support Dr. Soor-Melka's Opinions (Plaintiff's Motion at 8-9), the

8  Court will not second guess the ALJ's reasonable determination that it is not.  See

9  Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001) (not district court's role to

10  second-guess ALJ's reasonable interpretation of the evidence) (citation omitted).

11      Third, the ALJ properly rejected Dr. Soor-Melka's Opinions in favor of the

12  conflicting opinions of the state-agency examining psychiatrist, Dr. Inderjit

13  Seehari (who determined that plaintiff was "capable of doing simple repetitive

14  tasks") (AR 330), and the state-agency reviewing physician, Dr. H.M. Skopec

15  (who opined that plaintiff would be able to perform non-public, simple repetitive

16  tasks) (AR 320).  The opinion of Dr. Seehari was supported by the psychiatrist's

17  independent examination of plaintiff (AR 327-31), and thus, without more,

18  constituted substantial evidence upon which the ALJ could properly rely to reject

19  the treating physician's opinions.  See, e.g., Tonapetyan v. Halter, 242 F.3d 1144,

20  1149 (9th Cir. 2001) (consultative examiner's opinion on its own constituted

21  substantial evidence, because it rested on independent examination of claimant);

22  Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995).  Dr. Skopec's opinion

23  also constituted substantial evidence supporting the ALJ's decision since it was

24  _____

25      [5]Plaintiff complains that the ALJ misstated the type of medications she was prescribed.
   (Plaintiff's Motion at 9).  To the extent the ALJ erred in this respect, the Court finds any such

26  error to be harmless.  Here, what the ALJ found significant was plaintiff's non-compliance,
   irrespective of the type of medication prescribed.  See Molina, 674 F.3d at 1115 (ALJ's

27  misstatement of facts considered harmless if the error was "inconsequential to the ultimate
   nondisability determination") (citations and internal quotation marks omitted).

28

1  supported by the other medical evidence in the record as well as Dr. Seehari's

2  opinion and underlying independent examination.  See Tonapetyan, 242 F.3d at

3  1149 (holding that opinions of nontreating or nonexamining doctors may serve as

4  substantial evidence when consistent with independent clinical findings or other

5  evidence in the record); Andrews, 53 F.3d at 1041 ("reports of the nonexamining

6  advisor need not be discounted and may serve as substantial evidence when they

7  are supported by other evidence in the record and are consistent with it").

8       Finally, contrary to plaintiff's contention, the ALJ did not fail in his duty to

9  develop the record because he did not recontact Dr. Soor-Melka "to obtain

10  clarification and/or additional evidence."  (Plaintiff's Motion at 9-10).  Although

11  plaintiff bears the burden of proving disability, the ALJ has an affirmative duty to

12  assist a claimant in developing the record "when there is ambiguous evidence or

13  when the record is inadequate to allow for proper evaluation of the evidence."

14  Mayes v. Massanari, 276 F.3d 453, 459-60 (9th Cir. 2001) (citation omitted);

15  Bustamante, 262 F.3d at 954; see also Webb v. Barnhart, 433 F.3d 683, 687 (9th

16  Cir. 2005) (ALJ has special duty fully and fairly to develop record and to assure

17  that claimant's interests are considered).  Here, Dr. Soor-Melka's December 2

18  report contained nothing more than check-box opinions without any explanation

19  of the bases for the opinions.  The ALJ had no obligation to recontact Dr. Soor-

20  Melka before rejecting the report.  See De Guzman, 343 Fed. Appx. at 209 (ALJ

21  has no obligation to recontact physician to determine the basis for opinions

22  expressed in "check-off reports that d[o] not contain any explanation of the bases

23  of their conclusions.") (citation and internal quotation marks omitted).  Even so,

24  the ALJ did not find that the record as a whole was ambiguous or inadequate to

25  permit a determination of plaintiff's disability.  To the contrary, the ALJ properly

26  relied on the opinions of Drs. Seehari and Skopec which, as noted above,

27  constituted substantial evidence that Plaintiff was not disabled.  Therefore, even

28  assuming Dr. Soor-Melka's Opinion was itself inadequate to allow the ALJ to

11

determine the basis therefor, the ALJ did not err in failing to seek clarification. See Bayliss, 427 F.3d at 1217 (no duty to recontact where other evidence in record is adequate for ALJ to reach a disability determination).

Accordingly, a remand or reversal on this basis is not warranted.

**B.     The ALJ Properly Evaluated Plaintiff's Residual Functional Capacity**

Plaintiff contends that the ALJ failed properly to assess his residual functional capacity, in essence, because the ALJ failed to account for the significant mental limitations expressed in Dr. Soor-Melka's Opinions. (Plaintiff's Motion at 11-13). As noted above, however, the ALJ properly rejected such opinions for clear and convincing reasons. Moreover, as also indicated above, the ALJ's assessment that plaintiff retained the mental residual functional capacity to do work that involved "simple repetitive tasks" with "no direct contact with the general public" (AR 17) is supported by substantial evidence (*i.e.*, the opinions of Dr. Seehari and Dr. Skopec that plaintiff could do work involving "simple repetitive tasks") (AR 320, 330).

Accordingly, a remand or reversal on this basis is not warranted.

**V.     CONCLUSION**

For the foregoing reasons, the decision of the Commissioner of Social Security is affirmed.

LET JUDGMENT BE ENTERED ACCORDINGLY.

DATED:   October 29, 2012

_____
                      /s/
Honorable Jacqueline Chooljian
UNITED STATES MAGISTRATE JUDGE